IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 20–cv–00654–DDD–KMT

THE AMERICAN INSURANCE COMPANY, an Ohio corporation,

    Plaintiff/Counter-Defendant,

v.

PINE TERRACE HOMEOWNERS ASSOCIATION,

    Defendant/Counter-Plaintiff.

---

**ORDER**

---

This matter is before the court on the "Motion to Compel Production of Third-Party Documents Improperly Withheld by Defendant," filed by Plaintiff The American Insurance Company ("AIC"). [("Motion"), Doc. No. 48.] Defendant Pine Terrace Homeowners Association ("the HOA," or "Pine Terrace HOA") has responded in opposition to the Motion, and Plaintiff has replied. [("Response"), Doc. No. 63; ("Reply"), Doc. No. 69.]

**BACKGROUND**

Pine Terrace HOA owns the common areas of certain property in Colorado Springs, Colorado, consisting of 34 buildings containing 49 units. [("Amended Complaint"), Doc. No. 9 at ¶¶ 11, 18.] The property was insured by AIC on August 6, 2018, when a hailstorm allegedly caused damage. [*Id.* at ¶¶ 25-26.] Pine Terrace HOA made a claim on the AIC policy within a few days of the event. [*Id.*] AIC agreed to a replacement-cost valuation for the claim of $6,112,613.37, and has paid $4,312,747.85 to date. [*Id.* at ¶ 187.]

Having been unable to fully resolve the claim with AIC to the HOA's satisfaction, on or about March 1, 2019, the HOA retained a public adjuster, C3 Group, Inc. ("C3 Group"), to pursue the claim further. [Doc. No. 63-3.] On March 9, 2020, AIC brought this action against its insured seeking a declaration that it does not owe further monetary sums to the HOA. [Doc. No. 1; Am. Compl. ¶¶ 149-154.] Further, AIC brings affirmative contract claims seeking reimbursement or recoupment for the amount AIC has already paid on the claim, asserting that the HOA and C3 Group have misrepresented various costs and items in the proof of loss submitted to AIC, and have thus breached the anti-misrepresentation clause of the Policy. [Am. Compl. ¶¶ 159-91.] In response, the HOA raised a number of affirmative defenses and brought counterclaims alleging breach of contract and unreasonable delay and denial of covered benefits under the policy. [Doc. No. 20.]

Discovery is ongoing. AIC has issued document subpoenas on third parties C3 Group, Inc., Stritzel Construction Management, and Pella Windows & Doors. A large number of documents, otherwise responsive to AIC's discovery requests, have been withheld by Pine Terrace HOA on various privilege grounds. [*See* Doc. No. 48-14.]

The court, on March 12, 2021, found Pine Terrace's Amended Privilege Log to be insufficient and ordered the Defendant to file an amended and expanded privilege log and to file a commensurate privilege log participant guide. [Doc. No. 73.] The Defendants did that on March 19, 2021. [Doc. No. 74.] In spite of re-working the privilege log and agreeing to the production of some of the documents previously withheld, the 158-page log still contains many of the same entries objected to, and challenged by, AIC in the Motion. The parties, during a

hearing on April 16, 2021, confirmed that court intervention was necessary to resolve the privilege issues raised in the instant Motion. [Doc. No. 79.]

The primary privileges relied upon by the HOA to withhold documents from discovery are attorney-client privilege, work product doctrine, and Federal Rule of Civil Procedure 26(b)(4)(B), concerning documents in the possession of non-retained experts. The seminal issue for most of the disputed withholdings is whether documents and communications shared with individuals outside of the Merlin Law Group attorneys and the HOA Board members—the two entities who would normally share the highest level of protected communications—defeats otherwise applicable privileges. Those third-party groups include: (1) the HOA's public adjuster, C3 Group; (2) C3 Group's outside counsel, Andrew Felser of Glade Voogt Lopez Smith; (3) the HOA's property manager, Diversified Management; (4) a window manufacturer who the Merlin Law Group unsuccessfully tried to retain as experts on behalf of the HOA, Pella Windows & Doors; (5) the contractor hired by the HOA to fix the storm damage, Stritzel Construction Management; (6) the general contractor hired by the HOA to assess and repair roof damage caused by the storm, Northwest Roofing; and (7) lawyers from Hogan Lovells, who are retained as general counsel by the HOA, though not specific to this litigation.

## ANALYSIS

*A.   Attorney-Client Privilege.*

It is well-settled under Colorado law[1] that confidential communications between an attorney and client for the purpose of obtaining or giving level advice are privileged from

---

[1] Where, as in this case, subject matter jurisdiction is premised on diversity, the court must apply Colorado's law governing attorney client privilege. *See White v. Am. Airlines, Inc.*, 915 F.2d 1414,

3

discovery. *GSL Grp., Inc. v. Travelers Indem. Co.*, No. 18-CV-00746-MSK-SKC, 2020 WL 4282291, at *6 (D. Colo. July 24, 2020). Colorado has codified the attorney-client privilege as follows: "[a]n attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment[.]" Colo. Rev. Stat. § 13-90-107(1)(b).

The attorney-client privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976); *see also United States v. Johnston,* 146 F.3d 785, 794 (10th Cir. 1998) (The "communication between a lawyer and client must relate to legal advice or strategy sought by the client."). The privilege does not allow the withholding of documents simply because they are the product of an attorney-client relationship, or simply because the communications involved an attorney. *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir.1995) ("[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege[.]"); *see also In re Grand Jury Proceedings*, 616 F.3d 1172, 1182-83 (10th Cir. 2010); *Curtis v. Progressive N. Ins. Co.*, No. CIV-17-1076-PRW, 2019 WL 1937596, at *4 (W.D. Okla. May 1, 2019).

Privileges, while important, unfortunately serve to withhold relevant information from the finder of fact, and for that reason, should be narrowly construed. *Plaza Ins. Co. v. Lester*, No. 14-cv-01162-LTB-CBS, 2015 WL 3528336, at *4 (D. Colo. June 4, 2015) (citing *Montgomery v. Leftwich, Moore & Douglas,* 161 F.R.D. 224, 225 (D.D.C. 1995)). The *sine qua*

---

1424 (10th Cir. 1990) ("In a civil case based upon a state cause of action, state law controls the determination of privileges.").

*non* for invocation of the privilege is that the communications in question were intended to be confidential. *United States v. Bump*, 605 F.2d 548, 550 (10th Cir.1979) ("When a matter is communicated to the lawyer with the intention or understanding it is to be repeated to another, the content of the statement is not within the privilege."); *Gottlieb v. Wiles*, 143 F.R.D. 241, 248–49 (D. Colo. 1992). The theory behind the privilege is that confidential communications will be impeded if the attorney and client are not assured that such communications will remain private. *Fisher,* 425 U.S. at 403; *Gottlieb*, 143 F.R.D. at 248-49. Since only confidential information is protected by the privilege, if the information has been, or is later, shared with third parties, the privilege will be deemed waived since the information is no longer confidential. *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir.1990) (noting the waiver of attorney-client privilege where the substance of the communication was disclosed to a third-party, even inadvertently); *see also Wildearth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243, 1265–66 (D. Colo. 2010).

Pine Terrace HOA is an entity who acts through its Board of Directors Jeff Book, Don Spradlin and Robert Scott. The Merlin Law Group's *raison d'etre* to communicate with the HOA is to give legal advice and guidance to the HOA in connection with the pending litigation. Therefore, documents and communications between the Merlin Law Group, retained by the Defendant HOA to defend against the allegations of AIC and to prosecute the HOA's claims against the insurance company, presumptively fall within the attorney-client privilege.

While the attorney-client privilege can be later destroyed if the confidential nature of the communication is polluted by a third-party's presence or by dissemination to a third-party, *see Fox. v. Alfini*, 432 P.3d 596, 600 (Colo. 2018), there are certain auxiliary persons whose presence

will not breach the confidentiality aureole. In *Alliance Construction Solutions, Inc. v. Department of Corrections*, 54 P.3d 861 (Colo. 2002), the Colorado Supreme Court considered whether an independent contractor associated with an entity party was a third-party to the attorney-client relationship, thus spoiling the privileged nature of a three-way communication between attorney, client, and contractor, or whether the contractor was effectively an agent of the client entity, thereby allowing the communication to retain its privileged character. There, the Colorado Supreme Court held that the privilege continues to apply where "the information-giver"—that is, a person who is either conveying information to an attorney for the purpose of obtaining legal advice, or a person who is receiving legal assistance or advice from an attorney— "[is] an employee, agent, or independent contractor with a significant relationship not only to the [ ] entity but also <u>to the transaction</u> that is the subject of the [ ] entity's need for legal services." *Id*. at 869 (emphasis added).

The issue here is which, if any, of the groups/individuals included on many of the communications listed on Defendant's revised privilege log fit the *Alliance* criteria.

In *GSL Group, Inc. v. Travelers Indemnity Company*, No. 18-cv-00746-MSK-SKC, 2020 WL 4282291 (D. Colo. July 24, 2020), Senior District Judge Marcia S. Krieger addressed whether a public adjuster, specifically hired to assist an insured property owner with an insurance claim and ultimate litigation, fell within the ambit of attorney-client privilege with the property owner's lawyer. In *GSL*, the plaintiff owned commercial property, which was insured by the same defendant as here, Travelers Indemnity Company. *Id.* at *1. Subsequent to a hailstorm, the plaintiff in *GSL* hired a public adjuster to pursue an insurance claim against Travelers. *Id.* Mr. O'Driscoll, the public adjuster, provided Travelers with only lump-sum

estimates from two contractors to repair the damaged property and refused to provide the contractors' detailed price calculations, stating that the contractors had claimed that their detailed price calculations were "confidential." *Id*. at *2. Eventually, Traveler's accused Mr. O'Driscoll of "substantially overstat[ing]" the costs of repairs, resulting in an estimate of repair which was "drastically and erroneously" higher than it should have been. *Id*. at *1. Ultimately, the court found that the public adjuster

> exercised a considerable amount of authority to convey information to Travelers about the claim or withhold it, to discuss the claim on GSL's behalf, and to attempt to reach an agreement with Travelers on the claim that GSL would accept. These actions are clearly consistent with Mr. O'Driscoll . . . acting as GSL's agent.

*Id*. at *7.

Similar to the public adjuster in *GSL*, the public adjuster here, C3 Group, has a comparable role. As with the lawyers, C3 Group's entire reason and justification for interacting at all with the Merlin Law Group attorneys and the HOA is this legal proceeding and the underlying insurance claim. C3 Group's contract with the HOA, together with the July 25, 2019 letter directed generally to insurance carriers, makes clear the significant role to be played by C3 Group in the insurance claim. [Doc. No. 63-3 at 7.] C3 Group plays a pivotal role in the decision-making process with respect to the litigation and C3 Group has a financial stake in the litigation. Just as in *GSL*, C3 Group's role here is consistent with the public adjuster acting as the HOA's agent for purposes of analyzing the attorney-client privilege. Therefore, inclusion of C3 Group personnel on communications between the Merlin Law Group and the HOA does not breach otherwise applicable attorney-client privilege, and these communications continue to retain their privileged character.

The other contractors involved in this case, however, are not in the same position. *See Alliance*, 54 P.3d at 869 (stating that although the attorney-client privilege may apply where the agent or contractor has a significant relationship to both the client entity and proceeding for which legal advice is sought, "the type of relationship between the client and the information-giver must be closely analyzed to determine the application of the privilege"). For instance, unlike the contract the HOA entered into with C3 Group, the Consultant Agreement with Stritzel Construction Management Inc., executed on September 1, 2018, which was long before any litigation was anticipated, provides that Stritzel will "assist the Owner and contractor in managing repairs to the damaged structures." [Doc. No. 48-1; Doc. No. 63-2.] The Consultant Agreement states that the HOA has already hired a roofing company/general contractor to make repairs and that the HOA has filed a claim with its insurance company. [Doc. No. 48-1 at 1.] The Agreement provides an hourly fee to be paid to Stritzel, and never mentions Stritzel working with the HOA's attorneys on the insurance claim or during any potential litigation. There is no mention in the contract that Stritzel will be required to work with any attorney, that any attorney has been retained, or that Pine Terrace anticipates any issues on its insurance claim. [*Id*. at 1-2.]

As mentioned in the Stritzel contract, Northwest Roofing was the contractor the HOA was already working with on roof repair. Additionally, early discussions between the HOA Board members indicated a desire to work with Pella on the same basis; that is, to repair or replace windows at the project which were damaged by the storm. [Doc. No. 48-3.] Emails between the HOA Board members, as early as mid-September 2018, indicate that the HOA was contemplating working with a certified Pella installer to repair damaged windows, and that some

of the windows in the structures might still have a Pella window warranty.[2] [*Id.* at 2.] By October 12, 2018, Pella was actively reviewing the window situation at the property. [Doc. No. 48-7 at 9.] By May 2019, Pella was providing quotes for the replacement of windows at the property. [*Id.* at 10-12.] Along the way, Pella provided numerous bids for window work at the property.

These relationships were all forged for the purpose of repairing the Pine Terrace HOA property, not to litigate the insurance claim. The fact that work by these vendors might result in evidence germane to the litigation in the future does not create a special confidential relationship. These entities clearly are not part of the attorney-client privileged circle, given the purposes of the privilege. *See Nat'l Farmers Union Prop. & Cas. Co. v. Dist. Ct. for City & Cty. of Denver*, 718 P.2d 1044, 1049 (Colo. 1986) (holding that the attorney-client privilege protects communications made to the attorney to enable him to give sound and informed legal advice) (citing *Upjohn Co. v. United States,* 449 U.S. 383, 390-91 (1981)); *see also Gordon v. Boyles*, 9 P.3d 1106, 1123 (Colo. 2000).

The parties have produced a management contract with Diversified Association management and Pine Terrace HOA, dated January 2019. [Doc. No. 48-10.] This is a standard management agreement and does not place any responsibility on Diversified, either to work on litigation, or to work with attorneys against the property insurance carrier, at all. Rather, Diversified was charged with collecting assessments, enforcing rules and regulations, and

---

[2] Counsel represented to the court that Pella had been retained for a period of time as an expert by Pine Terrace HOA. However, the evidence here shows that, as of November 9, 2020, Pella had not been retained as an expert by any party in the *litigation*, as opposed to simply being a vendor of products and services for the damaged buildings. [Doc. No. 48-15.]

maintaining the common elements of the property.[3] The Board members and Paul Reed were working to coordinate repairs of damaged buildings with Delaine Elsrode of Diversified, as early as September 13, 2018, in keeping with Diversified's management agreement to control and protect the common areas of the project. [*Id*. at 3.] Communication with Pine Terrace HOA and Diversified through Ms. Elsrode is clearly appropriate when the HOA is discussing and planning repair to the property, and fits with the property manager's duty to maintain the common elements of the property. But inclusion of Diversified and Ms. Elsrode is completely unnecessary, where the HOA is discussing its legal rights with its attorneys for <u>how to pay for</u> such repairs through insurance claims. Again, the difference is between needing to repair the property and needing legal advice concerning litigation over who is going to ultimately be responsible for paying for the repairs.

While discussion and plans for repair were going on at the Pine Terrace property, the insurance claim was being actively pursued as a method of payment. In December 2018, Board members were communicating about the business of repairing the property via mass email strings with Diversified's Elsrode, Mark Stritzel, and Northwest Roofing. [*Id*. at 8.] The same people, absent any attorney involvement, are continuously copied on the construction repair details.[4]

---

[3] The company is referred to as an agent of the HOA. However, this agency is clearly not extended to the litigation that eventually ensued.

[4] In or about October 2018, Robert Scott began expressing concern about the insurance claims process and suggested that the Board might need to consider attorney representation. [Doc. No. 48-4.] Instead of hiring an attorney, apparently, the HOA decided to obtain the services of a public adjuster as noted *supra*. The C3 Group contract was signed on March 1, 2019. [Doc. No. 63-3.]

The court finds that neither Diversified Association Management (Delaine Elsrode), nor Pella Windows and Doors (Steven Reimer, Steve Kasza, Jim Perrault and Taylor Bevis), nor Stritzel Construction Management (Mark Stritzel), nor Northwest Roofing (Paul Reed and Josh Miller) are entities/individuals to whom the attorney-client privilege extends. *Alliance*, 54 P.3d at 869. Therefore, inclusion of any of these entities or individuals on communications between the Merlin Law Group, Pine Terrace HOA (including its Board members), and/or C3 Group, which might otherwise be considered protected by the attorney-client privilege, are no longer protected, because the attorney-client privilege has been waived by their inclusion. For that reason, all such communications must be produced if otherwise discoverable.[5]

Accordingly, documents responsive to AIC's subpoenas to Stritzel and Pella may not be withheld on the basis of attorney-client privilege, given that the documents, by definition, are in the possession of Stritzel or Pella, respectively, and therefore any privilege which could have cloaked the withheld documents has been waived. AIC's subpoenas to C3 Group may be subject to attorney-client privilege if the privilege is not waived by inclusion in the communication of one of the non-privileged entities/individuals, and if the communication is otherwise qualified for the privilege.

## B. *Work Product Doctrine*

The work product doctrine exempts from discovery "documents and tangible things . . . prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3)(A). Its purpose is to give attorneys "a certain degree of privacy, free from unnecessary intrusion by opposing parties

---

[5] The court purposefully does not address any issues concerning the inclusion of attorneys from Hogan and Lovells, or the attorneys who represented C3 Group in communications, because this does not seem to be at issue in the present Motion.

and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947); *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, No. 17-CV-01595-CMA-MJW, 2018 WL 4697311, at *2 (D. Colo. June 11, 2018). "A document is protected by the work product privilege if it was prepared in anticipation of litigation by another party or that party's representative, and was intended to remain confidential." *Id.* (quoting *Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 624 (D. Colo. 1998)). Documents prepared in anticipation of litigation are those that, in light of the nature of the document and the factual situation in the particular case, can fairly be said to have been prepared or obtained <u>because of</u> the prospect of litigation. *Id*.

Ever since the Supreme Court first articulated the work-product doctrine in *Hickman v. Taylor*, the scope of discovery under Rule 26 has been understood to preclude "inquiries into the files and the mental impressions of an attorney." 329 U.S. at 510. The Supreme Court has explained that, "[a]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). The Tenth Circuit has followed, stating that "the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product." *Resol. Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir.1995). This understanding of the work-product doctrine was "substantially incorporated in Federal Rule of Civil Procedure 26(b)(3)." *Upjohn*, 449 U.S. at 398.

Rule 26(b)(3) provides, in relevant part, as follows:

(3) *Trial Preparation: Materials*.
  (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's

12

attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
    (i) they are otherwise discoverable under Rule 26(b)(1); and
    (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
  (B) *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

It is well-settled that the work product doctrine does not protect materials prepared in the "ordinary course of business." *Martensen v. Koch*, 301 F.R.D. 562, 572 (D. Colo. 2014); *W. Nat'l Bank v. Emps. Ins. of Wausau*, 109 F.R.D. 55, 57 (D. Colo. 1985). Thus, documents or tangible things that were prepared in the ordinary course of business, or that "would have been created in essentially similar form irrespective of the litigation," are not protected by the work product doctrine. *Martensen*, 301 F.R.D. at 572-73 (citations omitted); *Pinon*, 2018 WL 4697311, at *2. This is important in this case, because protection is apparently sought for information and documents which were created simply to repair and maintain HOA property, by persons whose business it was to do so, including a management company, a window manufacturer and installer, a roofer, and a construction contractor. These documents were not created for the litigation, even though they may be used in the litigation.

"[A]gents of a party or its representative, who stand in the legal shoes of the party, are entitled to the same work-product protections as the party itself." *Republic of Ecuador v. For Issuance of a Subpoena Under 28 U.S.C. Sec. 1782(a)*, 735 F.3d 1179, 1184 (10th Cir. 2013) ("It is therefore necessary that the [work-product] doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself."). "The phrase 'party or its

representatives,' implies agency, and each of the six listed examples [in Rule 26(b)(3)(A) ][6] connotes someone acting in either an agency or fiduciary capacity for the 'party or its representative." *Id.*; *see Mize v. Kai, Inc.*, No. 17-cv-00915-NYW, 2018 WL 1035084, at *8 (D. Colo. Feb. 23, 2018) (observing that, even if a document is prepared in anticipation of litigation, it is not subject to work product protection, where the document "reveals no legal advice or mental processes of [the party's] attorney about the litigation").

As long ago as 1970, the Advisory Committee to the Federal Rules expressly rejected the notion that the work product doctrine protected the documents of experts.[7] *Republic of Ecuador*, 735 F.3d at 1185. The drafters noted that leaving the application of the doctrine to caselaw had grown troublesome, given the "confusion and disagreement as to the scope of the *Hickman* work-product doctrine, particularly whether it extends beyond work actually performed by lawyers." *Id.* (quoting Fed. R. Civ. P. 26(b)(3) (1970 Comments)). By providing a rules-based work-product doctrine, the Committee made plainly clear that this protection did not "bring expert information within the work-product doctrine." *Id.* (quoting Fed. R. Civ. P. 26(b)(4) (1970 Comments)).

In this case, among the entities which the HOA includes in its work product protection privilege log, only C3 Group would "stand in the legal shoes" of the HOA with respect to the anticipated litigation, so as to potentially invoke the work product privilege without the specific inclusion of the Merlin Law Group attorneys. By contrast, Pella (Steven Reimer, Steve Kasza,

---

[6] The listed examples include a party's "attorney, consultant, surety, indemnitor, insurer, or agent." Fed. R. Civ. P. 26(b)(3)(A).

[7] The protection afforded by Rule 26(b)(4)(B), which is distinct from work product protection, is addressed in Section C *infra*.

14

Jim Perrault, and Taylor Bevis); Stritzel Construction Management (Mark Stritzel); and Northwest Roofing (Paul Reed and Josh Miller) are not party representatives, and do not act in an agency capacity or a fiduciary capacity for the party, Pine Terrace HOA.  Further, it is very likely that their communications and documents would have been prepared in the ordinary course of those entities' business, which was to repair the HOA property, not in anticipation of, or because of, the pending litigation.

Also, the court stresses that to be protected by the work product doctrine, even if documents were prepared in anticipation of litigation, the documents must also contain the mental processes of the attorney, or must divulge the attorney's strategies or legal impressions, and be intended to remain confidential.  Therefore, to the extent any communication involves, or was copied to, any of these entities, the work product protection will not apply.  The court finds it extremely unlikely that documents created by, or in the possession of, Stritzel, Pella, and/or Northwest Roofing would meet the work product protection criteria in this case.

In the middle is Diversified (Delaine Elsrode), who the court can conceive might have, at times, been entitled to the protections of the work product doctrine, with respect to communications with the attorneys for the HOA, or with respect to work performed at the direction of the attorneys, C3 Group, or the HOA, in anticipation of litigation.  Therefore, the court will allow the attorneys for Defendant Pine Terrace HOA to re-examine documents or tangible things in the possession of Diversified and/or Ms. Elsrode, to determine on a case-by-case basis whether the work product doctrine is applicable based on this Order, so long as another entity was not also copied or privy to the information.

C.     **Non-Retained, Non-Testifying Expert Witness.**

The HOA argues that, at some point, their counsel was working with Pella as a potential retained expert in the case. They do not go so far as to name Pella or any of its employees as "consulting" experts who will not be called to testify at trial. The HOA has presented no evidence that Pella or any of its employees was ever hired or had ever agreed to act as a litigation expert pursuant to Rule 26.

Federal Rule of Civil Procedure 26(b)(4)(B) provides:

> A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

"The rule [26(b)(4)(B)] is designed to promote fairness by precluding unreasonable access to an opposing partys diligent trial preparation." *Durflinger v. Artiles,* 727 F.2d 888, 891 (10th Cir. 1984). In general, courts have not allowed parties to discover factual knowledge and opinions possessed by an opposing party's consultative experts, where the experts acquired the information (1) through their <u>employment</u> with the opposing party, and (2) <u>in anticipation of the underlying litigation</u>. *Rocky Mountain Nat. Gas Co. v. Cooper Indus., Inc.*, 166 F.R.D. 481, 482 (D. Colo. 1996); *see, e.g., In re Sinking Barge "Ranger I" Cas.*, 92 F.R.D. 486, 488–89 (S.D. Tex. 1981); *Seiffer v. Topsy's Int'l, Inc.*, 69 F.R.D. 69, 72 (D. Kan. 1975).

In this case, Pella was consulted by the HOA and the construction personnel it hired very shortly after the hail event about replacing all damaged windows on the property and potentially replacing all windows that were not already Pella brand windows. The construction company and the HOA Board were in contact with Pella long before any hint of litigation ensued. Rule

26(b)(4)(B) permits a party to engage in discovery with respect to information consultative experts acquired *prior* to being retained by an opposing party in anticipation of the underlying litigation. *See Eliasen v. Hamilton*, 111 F.R.D. 396, 403 (N.D. Ill. 1986) (explaining that "the purpose of [Rule 26(b)(4)(B) ] is to protect from discovery only those facts and opinions the expert has acquired and developed for the client who hired him in anticipation of litigation or for trial"); *Sullivan v. Sturm, Ruger & Co.*, 80 F.R.D. 489, 491 (D. Mont. 1978) (holding that a consultative expert's knowledge and opinions were discoverable to the extent that they "were not developed for [the underlying] lawsuit, and more importantly, were not developed for the use of [the opposing party]"); *Barkwell v. Sturm Ruger Co.*, 79 F.R.D. 444, 446 (D. Alaska 1978) ("[T]he entire thrust of [Rule 26(b)(4)(B) ] is to prevent one party from utilizing the services of the opponent's experts by means of a deposition. The Rule, therefore, does not apply to the opinions held or facts known by [the] expert prior to his employment by [the defendant]."); *Nelco Corp. v. Slater Elec. Inc.*, 80 F.R.D. 411, 414 (E.D.N.Y. 1978) ("[The consultative expert] would be required to respond to questions propounded to him as to facts known and opinions held prior to his involvement as an expert in the underlying litigation.").

    Here, the HOA seeks to hide information regarding Pella Windows on the slender basis that at some unexplained point, for some undisclosed compensation, the attorneys for the HOA considered retaining someone at Pella as an expert witness, but was turned down by the Pella employee. In other words, Pella and its personnel worked with the HOA on repair of the property and bid on replacement of damaged windows; but far from becoming an advocate in the case on behalf of the HOA, Pella specifically refused to become a part of the HOA's litigation against its insurance company.

As stated above, Rule 26(b)(4)(B) is designed to prevent a litigant from unfairly benefitting from an opposing party's work and preparation during litigation. *Durflinger*, 727 F.2d at 891. There is no risk of such an unfair benefit in this case. *Rocky Mountain Nat. Gas*, 166 F.R.D. at 482–83. Pella personnel obtained knowledge of facts in this case through its ordinary business of selling and installing new windows. Pella personnel are fact witnesses, nothing more or less. "Allowing a party to 'buy' the right to suppress information which would otherwise be discoverable . . . is contrary to the principles behind the discovery rules." *Id.* at 483 (citing *Williamson v. Superior Ct. of L.A. Cnty.*, 582 P.2d 126, 131-32 (Cal. 1978)). Allowing discovery from this third-party fact witness, here, is in keeping with a liberal construction of the discovery rules. *Schlagenhauf v. Holder*, 379 U.S. 104, 114–15 (1964); *Hickman*, 329 U.S. at 507 (cautioning that deposition-discovery rules must be construed liberally). Therefore, documents and other information from Pella will not be subject to protection under Rule 26(b)(4)(B), and should be produced if otherwise responsive and relevant.

Accordingly, it is

**ORDERED** that the "Motion to Compel Production of Third-Party Documents Improperly Withheld by Defendant" (Doc. No. 48) is **GRANTED** consistent with this Order. It is further

**ORDERED** that any and all documents improperly withheld from production on the basis of the privileges found to have been improperly asserted under the terms of this Order **shall be produced by Pine Terrace HOA to Plaintiff AIC on or before June 4, 2021.** It is further

**ORDERED** that in order to facilitate in camera review, should such be necessary, Pine Terrace HOA shall prepare a revised privilege log, including only those items which counsel,

after due deliberation and review and consistent with the findings herein, continue to withhold as privileged. That amended privilege log will be produced to Plaintiff AIC simultaneously with the production of the now deemed non-privileged documents **on June 4, 2021**.

DATED this 21st day of May, 2021.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge