IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 20–cv–00654–DDD–KMT

THE AMERICAN INSURANCE COMPANY, an Ohio corporation,

    Plaintiff/Counter-Defendant,

v.

PINE TERRACE HOMEOWNERS ASSOCIATION,

    Defendant/Counter-Plaintiff.

**ORDER**

This matter is before the court on the "Motion to Compel Discovery," filed by Defendant/Counter-Plaintiff Pine Terrace Homeowners Association ("Pine Terrace," or "the HOA"). [("Motion"), Doc. No. 67.] Plaintiff/Counter-Defendant American Insurance Company ("AIC") has responded in opposition to the Motion, and Pine Terrace has replied.[1] [("Response"), Doc. No. 76; ("Reply"), Doc. No. 77.]

*I. BACKGROUND*

Pine Terrace owns the common areas of certain property in Colorado Springs, Colorado, consisting of 34 buildings containing 49 units. [("Amended Complaint"), Doc. No. 9 at ¶¶ 11, 18.] The HOA property was insured by AIC on August 6, 2018, when a hailstorm allegedly

---

[1] Prior to the filing of the present Motion, the court held an informal discovery conference with the parties, in an attempt to negotiate and/or narrow the issues now considered. [Doc. No. 44.]

caused damage.  [*Id.* at ¶¶ 25-26.]  Pine Terrace made a claim for damages against the AIC policy within a few days of the weather event.  [*Id.*]

Ultimately, on March 9, 2020, AIC brought this action against its insured seeking a declaration that it does not owe further monetary sums to the HOA.  [*Id*. at ¶¶ 149-54.]  AIC also brings affirmative contract claims seeking reimbursement or recoupment for the amount it has already paid on the claim, asserting that the HOA and its public adjuster misrepresented various costs and items in the proof of loss submitted to AIC and have thus breached the anti-misrepresentation clause of the policy.  [*Id*. ¶¶ 159-91.]  The HOA, in response, raised a number of affirmative defenses and brought two counterclaims, first alleging breach of contract, and second alleging unreasonable delay and denial of covered benefits under the policy.  [("Answer"), Doc. No. 20.]

In the present Motion, Pine Terrace seeks complete responses to disputed discovery Interrogatories Nos. 5 and 6, and to Request for Production of Documents No. 3, as those discovery requests were modified after the informal hearing.  [Mot. Ex. 1; *see* Doc. No. 44.]

## II.  LEGAL STANDARDS

To prevail on a statutory bad faith insurance claim, a plaintiff must prove only that a benefit to which it was entitled under an insurance policy was delayed or denied without a reasonable basis.  *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 756 (Colo. App. 2012) (emphasis added); *see* C.R.S. § 10-3-1115(1)(a) ("[A] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."); *see also Yale Condominiums Homeowner's Ass'n,* No. 19-cv-02477-KMT, 2021 WL 1222518, at *6 (D. Colo. Apr. 1, 2021).

The reasonableness of an insurer's conduct is determined objectively. *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343 (Colo. 2004). "[I]f a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable,' this weighs against a finding that the insurer acted unreasonably." *Vaccaro*, 275 P.3d at 760 (quoting *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010)).

## III. ANALYSIS

> **Amended Interrogatory No. 5: Identify the individuals employed by AIC, including title and function, who are responsible for devising, implementing, and overseeing the training of the adjusters, claims representatives, claims supervisors, or any other individuals substantively involved in the handling of Pine Terrace's Claim from January 2012 to present.**

"Every contract in Colorado contains an implied duty of good faith and fair dealing." *Goodson v. Am. Standard Ins. Co. of Wisc.*, 89 P.3d 409, 414 (Colo. 2004) (citing *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo.2003)). "An insurer's breach of this duty [of good faith and fair dealing] gives rise to a separate cause of action sounding in tort." *Id*. (citing *Cary*, 68 P.3d at 466).

In this case, Pine Terrace does not allege a breach of the implied duty of good faith and fair dealing. Nor does the HOA allege a separate cause of action in common law tort. Instead, Pine Terrace's first counterclaim sounds only in contract. Under Colorado law, a breach of contract claim has four elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Here, Pine Terrace alleges that a contract exists between itself and AIC, that it performed by paying premiums, that AIC failed to perform its own obligations under the contract

3

by declining to pay the full amount of covered damages, and that Pine Terrace suffered resulting damages. [Answer 34 ¶¶ 89-96.] The only other counterclaim brought by Pine Terrace against AIC is for statutory bad faith. [*Id.* at 35-37 ¶¶ 97-118.] Pine Terrace has, therefore, not alleged any claim to which evidence that an adjuster or other AIC employee knowingly or recklessly disregarded the validity of the insured's claim would be relevant. *See Vaccaro*, 275 P.3d at 760 ("[A] legal standard derived from common law bad faith cases does not necessarily govern plaintiff's claim under the Statutes."). The statutory bad faith claim addresses "whether an insurer denied benefits without a reasonable basis," and does not concern the knowledge or motive of an adjuster or supervisors. *Id.*; *see* Colo. Rev. Stat. § 10-3-1115 ("[F]or the purposes of an action brought pursuant to this section and section 10-3-1116, an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.").

Pine Terrace has been provided with AIC's claim-handling guidelines. Whether or not the company's investigation and claims adjustment was handled in accordance with its own guidelines and prevailing industry standards – thus rendering it *objectively* reasonable – is precisely the question to be resolved by the jury. It simply does not matter whether the lack of a *reasonable basis* is proven to be the result of greed, evil intent, lack of training and knowledge, or mere mistake on the part of the adjuster. If there is no reasonable basis for a full or partial denial of a claim, the statute has been violated. *See Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 975 (Colo. App. 2011) (observing that the burden of proving a statutory claim is "less onerous" than that of common law claim); *but see Sanderson*, 251 P.3d at 1217 (stating that,

4

where "an insurer maintains a mistaken belief that a claim is not compensable, it may still be within the scope of permissible challenge").

Pine Terrace's request for information about the training of AIC's adjusters is irrelevant to this claim. Here, it does not matter whether the claim was investigated and resolved by a well-trained insurance adjuster, or by Mr. Ed, the talking horse.[2] What matters is whether or not there was an objectively reasonable basis for: (1) the conduct and actions of the insurance company adjusters and others during the claims handling process; and (2) the company's conclusions regarding payment on the claim. On these claims, it would be disproportionate and burdensome to require Plaintiff/Counter-Defendant to provide the identities of all other AIC employees who may have had even a small, limited role in training for a nine-year period, where many of those individuals, if not all, have had literally no involvement in this case, and where those individuals' testimony, even if provided, would have no effect on any issue in the case.

The motion is, therefore, denied as to Interrogatory No. 5.

---

[2] Not to take away any credit from Mr. Ed, of course. As actor Alan Young, who played Mr. Ed's owner Wilbur in the 1961-66 television show recounted: "Ed actually learned to move his lips on cue when the trainer touched his hoof. In fact, he soon learned to do it when I stopped talking during a scene! Ed was very smart." *Alan Young talks about Mister Ed and Hollywood lore*, http://www.mydailyfind.com/features/mister-eds-alan-young-talks-about-the-talking-horse-and-hollywood-lore.html (last visited May 26, 2021.).

**Amended Interrogatory No. 6: Identify all financial rewards programs that would have been applicable to AIC adjusters working on the Claim in this case, during the adjustment time period, from August 8, 2018, to present.**

**Amended Request for Production No. 3: All documents related to the measurements used in evaluating the performance of American adjusters working on the Claim in this case, during the adjustment time period, from August 8, 2018, to present.**

The court addresses these two discovery requests jointly because they strike at the same issue, namely: Did the adjusters on the Pine Terrace claim have an incentive to devalue the claim either to try[3] to gain a direct financial reward from an AIC program, or to enhance their job evaluations, which in turn might lead to higher salaries, promotions or other job benefits?

While the court agreed with the HOA at the time of the informal discovery conference that, generally, in bad faith cases involving insurance claims, such inquiry is often considered relevant, [*see* Doc. No. 44 at 57-58, 64-65, 68], the underlying case support for this conclusion inevitably addresses elements of common law bad faith. To prevail on a claim for common law bad faith, a plaintiff must prove that the defendant "acted unreasonably and with knowledge of or reckless disregard for the fact that no reasonable basis existed for denying the claim." *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 847 (Colo. 2018) (quoting *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985)) (emphasis added). The motives of the adjusters in such a scenario are relevant to whether adjusters are acting with knowledge or reckless disregard. However, when

---

[3] AIC's response to Interrogatory No. 6, stating that no adjuster "was paid incentive compensation that was tied to the amount of benefits approved for property insurance claims during the time period," misses the point of the interrogatory entirely. The issue is not whether an adjuster succeeded in obtaining incentive pay, but rather whether such a program existed and whether the program might cause an adjuster – such as those working on the Pine Terrace claim – to "try" to qualify by wrongfully devaluing claims (even if he/she failed). However, in light of the ruling here, this is a moot point.

the only bad faith claim is based on the Colorado statute, the motives of adjusters are irrelevant. What *is* relevant is whether the actions and activities taken by company representatives and the decisions made in resolving the claim(s) have an **objectively** reasonable basis. The underlying motivations or incentives of the persons acting on behalf of the company are immaterial, so long as an objectively reasonable basis exists for the conduct.

The motion is, therefore, denied as to both Interrogatory No. 6 and Request for Production No. 3.

Accordingly, it is

**ORDERED** that the "Motion to Compel Discovery" [Doc. No. 67] is **DENIED**.

Dated May 28, 2021.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge