IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20–cv–00654–DDD–MDB

THE AMERICAN INSURANCE COMPANY, an Ohio corporation,

   Plaintiff/Counter-Defendant,

v.

PINE TERRACE HOMEOWNERS ASSOCIATION,

   Defendant/Counter-Plaintiff.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Maritza Dominguez Braswell**

Before the Court is "Defendant's Motion for Leave to Amend its Answer, Affirmative Defenses, and Counterclaims." (["Motion"], Doc. No. 156.) Plaintiff has filed a response, and Defendant has replied. (["Response"], Doc. No. 169; ["Reply"], Doc. No. 172.) For the following reasons, it is **RECOMMENDED**[1] that the Motion be **GRANTED in part**, and **DENIED in part**.

### BACKGROUND

This lawsuit concerns a property insurance claim under an insurance policy that Plaintiff The American Insurance Company ("AIC") issued to Defendant Pine Terrace Homeowners Association ("Pine Terrace"). Under that policy, AIC provided coverage for a thirty-four-

---

[1] The disposition of the present Motion is potentially dispositive of at least some of the parties' claims and defenses. Therefore, out of an abundance of caution, the Court proceeds by Recommendation rather than by Order.

building commercial residential property located in Colorado Springs, Colorado. (Doc. No. 9 at ¶ 8; Doc. No. 21 at 10.) Sometime in August 2018, a hailstorm caused damage to the Pine Terrace property. (Doc. No. 9 at ¶¶ 25-26.) AIC issued a payment of $2,270,603.67 on November 19, 2018. After that payment, Pine Terrace hired C3, a public adjuster, and eventually AIC made additional payments, for a total of $4,312,747.85 toward the Claim. (Doc. No. 21 at 11.)

On March 9, 2020, AIC sued Pine Terrace for breach of contract and breach of the implied covenant of good faith and fair dealing, alleging Pine Terrace made material misrepresentations and seeking a declaratory judgment that AIC owes nothing more to Pine Terrace under the policy. (Doc. No. 9 at ¶¶ 149-91.) AIC also seeks recoupment of the $4,312,747.85 insurance benefits it paid to Pine Terrace. (*Id.*) Pine Terrace counterclaims and seeks over $30 million in damages for breach of contract and unreasonable delay and denial of payment under §§ 10-3-1115 and 10-3-1116 of the Colorado Revised Statutes. (Doc. No. 20 at ¶¶ 89-118.)

On April 22, 2022, approximately two years after AIC filed its Complaint, Pine Terrace filed this Motion seeking to amend its Answer and Counterclaims. Specifically, Pine Terrace seeks to update its Answer, add a counterclaim for common law bad faith (which, according to Pine Terrace, relates back to its already-filed statutory bad faith claim), and add a claim for exemplary damages. (Doc. No. 156 at 1-2; *see* Doc. No. 156-1.)

Pine Terrace states that it filed its Motion "only after generating sufficient evidence necessary to support its proposed amendment," and that it "has been diligent in seeking discovery necessary to support its new claims." (Doc. No. 156 at 4; Doc. No. 172 at 1.) In support of its Motion, Pine Terrace cites to, and attaches the deposition testimony of, several

witnesses. (Doc. No. 156 at 8-13; *see* Doc. No. 156-3; Doc. No. 156-4; Doc. No. 156-5; Doc. No. 156-7; Doc. No. 156-8; Doc. No. 156-13; Doc. No. 156-14.) Pine Terrace contends that through these depositions and other discovery it has learned that "AIC has misrepresented several material facts with respect to AIC's estimates, payments, and relating to its accusations for fraud, misrepresentation, and concealment in its coverage letter and lawsuit." (Doc. No. 156 at 5.) Pine Terrace also argues that the new discovery gives rise to a claim for exemplary damages because no later than January 2020, AIC was fully aware of the mistaken positions on which it based its claim decisions and this lawsuit, but it nevertheless relied on that misinformation to sue its insured, Pine Terrace. (*Id.* at 7-14.) Additionally, Pine Terrace claims that AIC has willfully withheld monies it knows are owed to Pine Terrace, and that AIC has knowingly misrepresented coverage. (*Id.*)

AIC, on the other hand, argues that "Pine Terrace cannot establish good cause under Rule 16," because the Motion is based on facts it already "knew before it ever filed its [original] counterclaims." (Doc. No. 169 at 1.) AIC also argues that "Pine Terrace cannot satisfy Rule 15," because "[d]iscovery has been underway for over two years," and "[i]t would be unduly prejudicial" to permit additional counterclaims "with different legal standards and case theories than what [Pine Terrace] has presented for years while discovery was ongoing." (*Id.*) AIC also argues that Pine Terrace's proposed common law bad faith claim is time-barred and therefore futile. (*Id.*) And finally, AIC argues that Pine Terrace has not made a *prima facie* showing in support of adding an exemplary damages claim. (*Id.*)

This case is in the late stages of litigation. The parties have already exchanged multiple sets of written discovery, issued numerous third-party subpoenas, produced thousands of pages

3

of documents, completed multiple fact-witness depositions, disclosed experts, and filed dispositive motions. (Doc. No. 170; *see* Doc. No 201; Doc. No. 208; Doc. No. 209.)

## LEGAL STANDARDS

### I.   Amendment Standards under Rules 15 and 16

The deadline to amend pleadings expired in July 2020. (Doc. No. 26 at 14.) Thus, pursuant to Rule 16(b)(4), Pine Terrace must show good cause for the delay in seeking amendment. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). Rule 16(b) is "more stringent" than Rule 15 and requires "some persuasive reason as to why the amendment could not have been effected within the time frame established by the court." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000). If the moving party "knew of the underlying conduct but simply failed to raise [its] claims," then "the claims are barred." *Gorsuch,* 771 F.3d at 1240. "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party" but rather "on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Colo. Visionary Acad.*, 194 F.R.D at 687.

By contrast, Rule 15 *does* take prejudice into account. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993); *Chavez v. Hatterman*, Civ. A. No. 06–cv–02525–WYD–MEH, 2009 WL 82496, at *6 (D. Colo. Jan. 13, 2009). A court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

4

The decision to allow amendment is within the trial court's discretion, *Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 978-79 (10th Cir. 1996), and Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The purpose of Rule 15 is to "provide litigants 'the maximum opportunity for each claim to be decided on the merits rather than on procedural niceties.'" *Minter*, 451 F.3d at 1204 (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)). Generally, a party seeking amendment "should not be prevented from pursuing a valid claim … provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits." *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090-91 (10th Cir. 1991). The nonmoving party bears the burden of showing the amendment should be rejected. *Corp. Stock Transfer, Inc. v. AE Biofuels, Inc.*, 663 F. Supp. 2d 1056, 1061 (D. Colo. 2009); *Acker v. Burlington N. & Santa Fe Ry. Co.*, 215 F.R.D. 645, 654 (D. Kan. 2003).

**II.    Exemplary Damages Standard**

Courts in this District have held that § 13-21-102 of the Colorado Revised Statutes, not Rules 15 or 16, controls the inquiry when the amendment concerns exemplary damages. *See, e.g.*, *Sands v. Integon Nat'l Ins. Co.*, Civ. A. No. 18-cv-00714-PAB-NYW, 2020 WL 8188184 (D. Colo. Mar. 9, 2020); *Wollam v. Wright Med. Grp., Inc.*, Civ. A. No. 10-cv-3104-DME-BNB, 2012 WL 4510695, at *9 (D. Colo. Sept. 30, 2012); *Witt v. Condos. at the Boulders Ass'n*, No. CIVA04CV02000MSKOES, 2006 WL 348086, at *7 (D. Colo. Feb. 13, 2006); *see also Am. Econ. Ins. Co. v. William Schoolcraft*, M.D., P.C., No. 05-cv-01870-LTB-BNB, 2007 WL 160951, at *2 (D. Colo. Jan. 17, 2007). Indeed, because some discovery is required before a litigant can seek to add a request for exemplary damages, it would be unfair to hold litigants to

5

the ordinary amendment standards. *See* Colo. Rev. Stat. § 13-21-102(1.5)(a) (providing that plaintiffs can move for exemplary damages "only after the exchange of initial disclosures pursuant to Rule 26 of the Colorado Rules of Civil Procedure," and only when they establish *prima facie* proof of a triable issue). Even with the application of § 13-21-102, a court may still deny a motion to amend to add exemplary damages because of delay, bad faith, undue expense, or other demonstrable prejudice. *Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007) (citation omitted).

  Arguing against Pine Terrace's request to add a claim for exemplary damages, AIC contends that "[p]unitive damages claims must be proved beyond a reasonable doubt at trial," and "Pine Terrace must submit evidence sufficient to persuade a reasonable jury beyond a reasonable doubt that [AIC's] conduct was 'willful and wanton.'" (Doc. No. 169 at 3.) However, on this Motion, the question is not whether Pine Terrace can prove its punitive damages claim beyond a reasonable doubt at trial, it is whether Pine Terrace has established enough facts that, if left unrebutted, would establish willful and wanton conduct. *Stamp*, 172 P.3d at 449 (Colo. 2007). And although Pine Terrace, as the moving party, has the burden on this issue, it is a low burden relative to the burden of proof at trial. *Affordify, Inc. v. Medac, Inc.*, Civ. A. No. 19-cv-02082-CMA-NRN, 2020 WL 6290375, at *5 (D. Colo. Oct. 27, 2020) (describing the burden on a motion to amend pursuant to § 13-21-102 as "an admittedly low threshold"); *see also RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, Civ. A. No. 16-cv-1301-PAB-GPG, 2018 WL 3055772, at *4 (D. Colo. May 10, 2018) ("At this stage of the litigation, the Court is only concerned with whether the evidence, when viewed in the light most favorable to plaintiffs, is sufficient to make out a *prima facie* case of willful and wanton behavior for the purpose of

6

allowing plaintiffs to amend their Complaint to include exemplary damages, not whether such evidence is sufficient to defeat a motion for summary judgment or to result in a jury verdict in plaintiffs' favor.").

**ANALYSIS**

**I.      Good Cause Under Rule 16**

In considering whether Pine Terrace has shown good cause to amend under Rule 16, the Court first notes that Pine Terrace filed this Motion one year and nine months after the deadline to file amendments. That delay is not insignificant. However, Pine Terrace explains that it waited to file its Motion until after it had "sufficient evidence…to support its proposed amendment." (Doc. No. 172 at 1.) It also states that it has been trying to set the deposition of AIC's corporate representative for months, and the Court notes that the parties' meaningful discovery disputes have contributed to that delay. (*Id.*) Pine Terrace also notes that the complications of the pandemic and shifting trial dates have also drawn out the process. (*Id.* at 13.) Further, and as noted above, the Rule 16 inquiry focuses on "on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Colo. Visionary Acad.*, 194 F.R.D at 687. Here, it appears Pine Terrace has been diligent in moving the matter forward. (Doc. No. 172 at 5-8.)

Although Pine Terrace arguably had some information with which to amend its pleadings after it deposed Sam Bullock in February 2021, as well as after it deposed Kathy Underhill in April 2021, the third-party contractors were not deposed until April 2022, the same month Pine Terrace filed this Motion. (Doc. No. 172-1; Doc. No. 172-2.) Thus, while the Court is troubled by Pine Terrace's delay, it appears there is at least some good cause for it, and AIC has not

demonstrated otherwise. Between Pine Terrace's desire to shore up additional claims, and the delays associated with the pandemic and litigation disputes, the good cause standard under Rule 16 is satisfied.

## II.     Timeliness & Prejudice Under Rule 15

AIC argues that the delay here is significant, and the Court agrees. This lawsuit commenced nearly three years ago. The parties have filed dispositive motions, and an amendment at this late stage will almost certainly require the reopening of some discovery and cause more delay. However, delay alone is not a sufficient reason to preclude amendment. The Court would need to find "undue delay," with "[e]mphasis on the adjective," to deny this Motion under Rule 15. *Minter*, 451 F.3d at 1205. "Lateness does not itself justify the denial of the amendment." *Id.* (citing *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975)). For the reasons set forth above, the Court finds that the proposed amendment is not "unduly delayed." Pine Terrace, like many litigants, had some hurdles to overcome during the pandemic and those hurdles were exacerbated by the contentious nature of this litigation, with multiple discovery motions and several deadline extensions. Additionally, before seeking to amend, Pine Terrace had to conduct enough discovery to satisfy the requirements of § 13-21-102, and while the exemplary damages claim is analyzed under a different standard, the evidence-gathering had to occur, practically-speaking, at the same time for all proposed claims. Thus, the Court does not find there was undue delay.

But the "most important" inquiry under Rule 15 is whether the amendment would prejudice the nonmoving party. *Minter*, 451 F.3d at 1207-08. AIC argues that it "has disclosed eight retained expert witnesses who have drafted their reports and issued their opinions based on

Pine Terrace's currently pled defenses and counterclaims." (Doc. No. 169 at 6.) The insurer further notes that "Pine Terrace moved to amend only two weeks before the reports were to be disclosed—providing [AIC's] experts with no opportunity to opine on the potential new claims." (*Id.*) AIC also argues that it already "took seven depositions of Pine Terrace's witnesses, questioning those witnesses on Pine Terrace's current counterclaims." (*Id.* at 7.) AIC argues it would be prejudiced by the amendments because it would be forced to incur additional and unnecessary expenses to, for example, have its insurance expert supplement his report. (*Id.* at 6.)

"Courts typically find prejudice only when the amendment unfairly affects the [nonmoving party] 'in terms of preparing their defense to the amendment.'" *Minter*, 451 F.3d at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.* (citations omitted). That is not the case here. The proposed common law bad faith claim is similar to the statutory bad faith claim that Pine Terrace already filed. It is based on many of the same facts and circumstances already at issue in this case, and it is based on the very same disagreements over coverage that are at the heart of the dispute already. Similarly, the exemplary damages claim, analyzed below under a different standard, is based on many of the same documents, testimony, and other evidence already gathered and at issue in this case—indeed it has to be, otherwise it would not be permitted under § 13-21-102. As for Pine Terrace's other proposed amendments, those do not appear to create a need for much more discovery, if any, and AIC does not claim that they do.

Additionally, AIC is not entirely precluded from preparing a defense. It may, as it argues, incur additional expenses during litigation (Doc. No. 169 at 6-7), but it can still prepare a

9

defense. And in any event, "the expenditure of time, money, and effort alone is not grounds for a finding of prejudice." *Bylin v. Billings*, 568 F.3d 1224, 1230 (10th Cir. 2009) (citations omitted). AIC subjected itself to the burdens and cost of litigation when it filed this suit, and it admits that it has repeatedly sought to extend discovery deadlines. (Doc. No. 169 at 6.) This means AIC has had a hand in extending the duration and cost of this litigation already. The Court also notes that AIC has filed its own motion to amend. (Doc. No. 130.) Although AIC's motion to amend was filed much earlier than Pine Terrace's Motion, it too was filed after the amendment deadline, and it too will contribute to the delay and additional expense. And finally, even if this Motion were denied, the parties would still require additional time to complete discovery as there are many depositions left to take and the parties continue to have meaningful disputes.[2] The Court understands that not all cases will involve amicable discussions and meaningful agreement over discovery, but by the same token, where delay is occasioned by the parties' own conduct, they should be hard-pressed to claim that delay will be prejudicial.

**III.   Futility Under Rule 15**

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004). In considering whether an amendment is futile, courts apply the same standard used to evaluate a claim under Rule 12(b)(6), accepting well-pleaded facts as true and reviewing solely to determine if the pleading

---

[2] The Court recently held an almost three-hour informal discovery conference to help the parties reach resolution on a list of deposition topics that have been the subject of several disputes for months. (*See* Doc. No. 202.) At almost every turn the parties disagreed about scope, relevance, privilege, and more. The Court did its best to help the parties reach resolution and avoid further disputes during the deposition, but it is clear that many of the delays in this case have been occasioned by the parties' inability to reach agreement on even small discovery issues.

states a plausible claim for relief as amended. *Openwater Safety IV, LLC v. Great Lakes Ins. SE*, 435 F. Supp. 3d 1142, 1151 (D. Colo. 2020) (citation omitted).

Here, AIC argues that the common law bad faith claim is futile because it is barred by a two-year statute of limitations. (Doc. No. 169 at 7-8.) Pine Terrace argues that Rule 15(c) permits its proposed amended pleading because the common law bad faith claim relates to the same conduct at issue in the counterclaims Pine Terrace filed on May 1, 2020. (Doc. No. 172 at 8.)

The Court does not have full briefing on the statute of limitations question, nor is that question squarely before the Court. *Cf. Bradley*, 238 F.Supp.2d 1242 (performing an analysis of the statute of limitations challenge and finding a proposed amendment was futile, because the parties submitted full summary judgment briefing on the statute of limitations). However, accepting the well-pleaded facts in the proposed amended pleading as true, the Court finds that Pine Terrace has stated at least a plausible claim for relief. Additionally, the Court has compared the allegations in Pine Terrace's proposed amended pleading to the allegations in its original pleading. The Court finds that the conduct alleged in support of the common law bad faith claim arises out of the same transaction and occurrences set out in the original pleading. *See* Fed. R. Civ. P. 15(c)(1)(B). Although the newly alleged facts give rise to different claims, they concern the same disagreement over coverage, the same interpretations of the subject policy, the same concerns and decisions related to replacement materials, and the same actions taken or not taken in light of estimates and other information. Thus, the Court finds that Pine Terrace's proposed amendments satisfy Rule 15.

### IV. Exemplary Damages

Even assuming Rules 15 and 16 were not satisfied, Pine Terrace could still add a claim for exemplary damages so long as the requirements of § 13-21-102 were satisfied. *Sands*, 2020 WL 8188184, at *3. To establish a *prima facie* case for exemplary damages under § 13-21-102, Pine Terrace must show willful and wanton conduct, which requires evidence of scienter. *Graham v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-00920-REB-NYW, 2020 WL 9720368, at *6 (D. Colo. June 30, 2020), *report and recommendation adopted*, 2021 WL 2092813 (D. Colo. Mar. 31, 2021). A *prima facie* case of willful and wanton conduct "requires more than the same accumulation of bad acts that underlie the claim for common law bad faith." *Id.*

Summarized at a very high level, Pine Terrace makes a two-part argument in favor of exemplary damages. First, Pine Terrace claims that AIC's decision to sue Pine Terrace was willful and wanton. Second, Pine Terrace claims that AIC knowingly and purposefully misrepresented coverage and withheld undisputed amounts owed to Pine Terrace. The first part of Pine Terrace's argument gives rise to a claim for exemplary damages, the second does not.

#### A. AIC's Decision to Sue Pine Terrace

In this lawsuit, AIC has alleged that its insured, Pine Terrace, made misrepresentations and included line items in its estimate that were unnecessary and/or inflated. (*See generally* Doc. No. 9.) Specifically, AIC alleges that the public adjuster, C3, submitted an estimate that improperly included $598,759.28 in general contractor overhead and profit. (*Id.* at ¶¶ 89-90.) However, C3's Matthew Behrens explained that inclusion of the general contractor overhead and profit was a simple mistake, and AIC's adjuster, Kathy Underhill, admitted in deposition that she knew Pine Terrace was no longer claiming the general contractor overhead and profit. (Doc. No.

12

156-3 at 290:4-25, 293:1-2; Doc. No. 156-4 at 218:7-17.) Pine Terrace contends that despite this knowledge, AIC nevertheless sued Pine Terrace and made the false claim that Pine Terrace included that line item. (Doc. No. 156 at 8-9.)

Pine Terrace also contends that AIC falsely alleged that it manipulated labor rates. (*Id.* at 9-11.) Pine Terrace claims that AIC's allegation was made recklessly and heedlessly, because Sam Bullock admitted that he never saw C3's disclaimers concerning the labor rates, and explained that he relied on Grant Trusler, a person who has never completed an Xactimate estimate. (*Id.* at 10-11.) Pine Terrace argues that Grant Trusler—unlike C3's Matthew Beherens—holds no certifications in the Xactimate program and that AIC's reliance on him, as well as AIC's general lack of knowledge and failure to understand the estimates, led to the reckless and frivolous allegations that AIC made against its insured, Pine Terrace. (*Id.*)

In its Response, AIC doubles down on its claim that Pine Terrace manipulated labor rates. (Doc. No. 169 at 11.) AIC argues that its allegations are based on expert opinions, admitting that both Grant Trusler and Sam Bullock are not trained on Xactimate. (*Id.*) AIC also argues that Pine Terrace's allegations concerning the general contractor profit and overhead line item refer to the wrong estimate, that the testimony Kathy Underhill gave on this topic was expressly retracted, and that Pine Terrace is taking deposition testimony out of context. (*Id.* at 8-10.)

The Court finds that Pine Terrace has put forward at least some evidence that AIC's decision to sue its own insured was willful and wanton with purposeful disregard for the facts that AIC had (or failed to obtain). Certainly, AIC may rebut this evidence (and indeed has already presented arguments in Response to this Motion), but at this stage the Court is not called

13

upon to parse through all of the evidence, weigh it, or make credibility determinations. *RCHFU*, 2018 WL 3055772, at *4; *see also Affordify*, 2020 WL 6290375, at *5 ("[I]n the context of an assessment of the *prima facie* case for exemplary damages amendment purposes, . . . [c]ontrary evidence is not part of the equation."). Instead, the Court must determine whether Pine Terrace has put forward enough facts, which if left unrebutted, would support a showing of willful and wanton conduct. *RCHFU*, 2018 WL 3055772, at *4. The Court finds that Pine Terrace has done that.

### B. AIC's Alleged Misrepresentations and Decision to Withhold Payments That Are Allegedly Undisputed

Pine Terrace alleges that AIC has withheld monies that AIC knows are owed to Pine Terrace. In its Response, AIC argues that there is no evidence that AIC actually believed these monies were owed or that it purposely withheld them despite that knowledge. (Doc. No. 169 at 12-13.) AIC also argues that the amounts are indeed in dispute because AIC claims—in this very litigation—that no more monies are owed to Pine Terrace. (*Id.*) Similarly, AIC argues that Pine Terrace's other allegations concerning coverage and claims handling are insufficient to establish a *prima facie* case for exemplary damages, because Pine Terrace did not submit any evidence that AIC actually believed money should be paid and then purposely withheld that money anyway. (*Id.* at 12-15.) The Court agrees.

At this time, there does not appear to be sufficient evidence of scienter or purposeful conduct with respect to the alleged monies owed and the coverage disputes at issue. Instead, the evidence reflects what is already at the crux of this dispute—a deep and multi-faceted disagreement over coverage and payment. Moreover, because those payment and coverage issues are already in dispute, Pine Terrace's allegedly "new" allegations concerning coverage decisions

and the withholding of funds seem to be "the same accumulation of bad acts" that form the basis for the claims already at issue. *Graham*, 2020 WL 9720368, at *6.

For the foregoing reasons, the Court finds that Pine Terrace's proposed amendments should be permitted, except that any claim for exemplary damages should be limited consistent with this Recommendation.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, this court respectfully

**RECOMMENDS** that the "Defendant's Motion for Leave to Amend its Answer, Affirmative Defenses, and Counterclaims" (Doc. No. 156) be **GRANTED in part**, and **DENIED in part**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 6th day of October, 2022.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge